FILED

IFP
No CV-30
Nte of
Interested
Parties

1

**ROSS MASSBAUM**

2

**26701 Quail Creek, 195**
**Laguna Hills, California**

3

**PH: 949 360-7355**

4

**Plaintiff in Pro Per**

2020 SEP -8 PM 1:09

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY___

5

6

## UNITED STATES DISTRICT COURT

7

## CENTRAL DISTRICT OF CALIFORNIA

8

## SOUTHERN DIVISION

9

10

11

ROSS MASSBAUM

**Plaintiff,**

12

vs.

**Defendants,**

13

14

**ACCOUNTS MANAGEMENT SERVICES, INC.,**
**ORCHARD LLC, property owner of 6101 Ball**

15

**Road, Cypress, Ca, 90630, GARY A. BEMIS,**
**Dr. FARZAD MASSOUDI, ASGHAR**

16

**MOHAMMAD, owner of ORCHARD LLC**

17

18

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:20-cv-01699 JVS (KESx)

**COMPLAINT FOR:** EX PARTE ASSET FREEZE
**Federal Debt Collections Practices Act;**
**Damages arising from a malicious Assault &**
**Battery with Intentional Disregard for Life;**
**Violation of Plaintiff's Due Process right in**
**The U.S. Const., Amendments V & XIV;**
**Diversity of Citizenship**
**Date:**
**Time:**
**Dept.**
**Hon.**

**(DEMAND FOR JURY TRIAL)**

19

20

### 1. **JURISDICTION**

21

This Court has jurisdiction for Diversity of Citizenship pursuant to Article 111, Sect. 2

22

of the U.S. Const.; violations under The Fair Debt Collection Practices Act (FDCPA 15

23

USC, Sections 1692-1692P), violations of the FTC, 15 USC, Sect. 45A-46 (m) (1) (A),

24

53 (b) (a), and the Due Process Clauses in the U.S. Const., Amendments V and X1V,

25

but is not limited to the aforementioned.

26

27

### 11. **VENUE**

28

Venue is proper pursuant to the Court's location in this federal district wherein

1

Defendant Orchard LLC's office building is situated, one office of which is leased to Defendants Accounts Management Services, Inc. and Gary A. Bemis, and where the assault and battery of Plaintiff by Defendants' employees, servants or agents are alleged to have occurred and are brought forth herein. Plaintiff is also domiciled in said federal district. Defendant Asghar Mohammad, owner of Defendant Orchard LLC with headquarters at 2135 N. Timbergrove Rd., Orange, Ca 92867, is a citizen and resident of an unknown foreign country, possibly Pakistan or India, and is therefore subject to a diversity of citizenship claim in this Federal Court.

### 111. **BACKGROUND**

Plaintiff made twenty-seven (27) parachute jumps during his <u>army service from February 1959 to February 1962</u>, with an injury caused by hitting a tree stump, resulting in spinal degeneration specifically in the most vulnerable region: his neck.

<u>In 2005</u> Plaintiff's vehicle was struck from behind by an Escalade traveling at a speed of 55-65 mph. That automotive near-tragedy exacerbated both neck and left shoulder damage from the parachute landing falls, immediately rendering him immobile.

He was taken by ambulance to Mission Viejo Hospital where neurosurgeon Farzad Massoudi operated, enforcing Plaintiff's neck with titanium plate(s) and reducing his throat diameter by operating through the front of his neck near his Adam's Apple.

Plaintiff lost his ability to speak coherently for almost a year. As a result, he was unable to close an active production deal with Harlequin books to make twelve movies based on selected novels.

<u>In 2007</u> Plaintiff met with Defendant Accounts Management Services, Inc.'s attorney Defendant Gary A. Bemis who is an owner or employee of the collection agency. Both

2

of these Defendants were seeking to collect for Defendant Massoudi's servives to
Plaintiff. Plaintiff paid twenty-five hundred dollars toward the nine thousand-dollar
surgery bill. At that time, Plaintiff signed an agreement to pay the $6500 balance, but
myriad expenses and the loss of his writing agreement eliminated his ability to pay said
balance.

Plaintiff's cousin and others who had been operated on by Dr. Massoudi have noted
that the doctor was performing <u>hundreds of neck operations on an exclusive basis
through Orange County hospitals</u> wherein he held and holds a monopoly on this type of
operation. After the Bemis meeting, Plaintiff met with the doctor's office manager and
complained of a lack of articulation/neck movement and nerve problems that caused
periodic but entire loss of feelings in both hands. Doctor Massoudi's manager
negotiated an agreement with Plaintiff whereby the doctor would forgo any further
payments beyond the $2500 he received. Said oral agreement was never memorialized
in writing due to Plaintiff's lack of contractual experience.

<u>In 2008</u> Defendant Bemis filed a judgment for $6500 in favor of Accounts
Management Services, Inc. which was never served or noticed to Plaintiff. In late 2019
Plaintiff learned of said judgment and its renewal in a kind letter from the Orange
County Clerk's office. Said judgment's notice, having never been dutifully served on
Plaintiff, provoked Plaintiff to file in California's Superior Court for injunctive relief vs
both Bemis and Accounts Management Services Inc. <u>On February 25, 2020</u>, Plaintiff
accompanied a process server to the Defendants' offices in the building at 6101 Ball
Road in Cypress. He did so to ensure that the court action for injunctive relief be
properly served.

## 1V. **PARTIES**

AT ALL TIMES HEREIN MENTIONED, PLAINTIFF ROSS MASSBAUM IS A native born national citizen of the United States of America, a U.S. Army veteran who is currently developing movie properties at his domicile in Orange County, State of California.

AT ALL TIMES MENTIONED HEREIN, Defendant Account Management Services, Inc. is a commercial collection agency operating with a full-time staff in Defendants Orchard LLC's and Asghar Mohammad's office building located at 6101 Ball Road, in the city of Cypress, County of Orange, State of California, responsible for the actions of his tenants, workers, employees, agents and servants.

AT ALL TIMES MENTIONED HEREIN, Defendant Gary A. Bemis, a Defendant in the original injunctive relief suit in Superior Court Case No. 01130827, with an office located within Defendant Account Management Services, Inc.'s offices, under color of law, pretext and custom, violated the law to wit: 42 US.C., Sect. 1983.

AT ALL TIMES HEREIN MENTIONED, Defendant Orchard LLC is the owner of the office building located at 6101 Ball Road, Cypress, Orange County, California and the landlord of Accounts Management Services, Inc. Orchard LLC is responsible for the conduct and actions on or in the premises of its tenants, whether that conduct or activity allows for injuries considered accidental or, as in this Plaintiff's case,  a deliberate, intentional disregard for life. Orchard LLC maintains U.S. headquarters at 2135 Timbergrove Road, Orange County, California 92867.

AT ALL TIMES HEREIN MENTIONED, Defendant Asghar Mohammad is the owner of ORCHARD LLC, and maintains control of the partnership's office building at 6101

4

Ball Rd., Cypress, California from its residential property at 2135 Timbergrove Rd, City

of Orange, County of Orange, California. Defendant is responsible for the conduct and

actions of his tenants, including Accounts Management Services, Inc., whether for

accidents, injury related or, as in this Plaintiff's case, wherein employees, agents, or

servants of his Defendant's perpetrated a deliberate, grievous act against the Plaintiff,

amounting to a deliberate, intentional disregard for Plaintiff's life while causing a

recurrence of injuries repaired by Defendant surgeon Farzad Massoudi (neck and

throat) and other doctors (left shoulder).

AT ALL TIMES MENTIONED HEREIN, Defendant surgeon Farzad Massoudi

contracted Defendants Bemis and Accounts Management Services, Inc. to collect the

$6500 balance from Plaintiff for service rendered and is responsible for their conduct

and actions taken throughout that process, including but not limited to responsibility for

its employees, agents or servants who deliberately and intentionally, with an exhibition

of great disregard for Plaintiff's life, grievously injured Plaintiff, thereby causing a

recurrence of the very neck injuries he – Massoudi - was hired to  repair and the

shoulder injuries repaired by other doctors.

Plaintiff is unaware of the true names and capacities of Defendants sued herein as

Does 1 through 10, and therefore sues these defendants by such fictitious names.

Plaintiff will amend this Complaint to denote their true names and capacities when

ascertained. Plaintiff is informed and believes, and therefore alleges, that each of such

fictitiously named Defendants is responsible in some manner for the Plaintiff's damages

herein alleged and proximately caused by such defendants' acts.

## V. **STATEMENT OF FACTS**

At all times herein mentioned, Defendants were the agent, servant or employee and, in doing the acts hereinafter described, were acting within the course and scope of such agency, servitude and employment, and with the permission and consent of each of their co-defendants. Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, did join together in their conduct and conspired to impair and violate Plaintiff's Due Process right on February 25, 2020, in their offices at 6101 Ball Rd., Cypress, California to find and serve a lawsuit for Injunctive Relief (that challenged Defendants' judgment process) filed in California Superior Court vs. Defendant Gary A. Bemis (as owner or employee of Accounts Management Services, Inc) and Accounts Management Services, Inc. and any other party capable of accepting service for the collection agency.

On February 25, 2020 plaintiff accompanied the process server to Defendants' offices at 6101 Ball Road, Cypress, California and located their offices in unit 207. Plaintiff entered a small waiting room and faced one heavy duty security door marked EMPLOYEES ONLY which barred Plaintiff's access to the Defendants' agents, servants or employees and Defendant Gary A. Bemis.

Plaintiff knocked and the door was opened partially by an unknown person who stated Gary A. Bemis was not present. Plaintiff explained that the process server was there with him to serve a lawsuit on Gary A. Bemis and Accounts Management Services, Inc. The door was closed and opened again by a second unknown person who spoke vaguely about accepting service of Plaintiff's lawsuit.

While observing his process server's attempt to serve the Court papers, Defendants and/or their agents, servants or employees (who are unknown to and were unseen by

Plaintiff as they remained hidden behind the partially-open security door), refused to accept service and demanded Plaintiff allow them to close the door. Plaintiff was equally insistent that a responsible party accept service by his process server and kept his left foot planted firmly against the partially-open door.

Plaintiff, acting on his belief that the security door might be closed again without allowing the process server to serve his court papers, continued to keep his foot against the security door which was yet open approximately eighteen inches. Another unknown person on the inside began shouting, attempting to force Plaintiff's left foot away from the bottom of the door, but plaintiff held his ground, more aware than ever that if the door was to close, the court papers would not be served that day.

At no time did plaintiff attempt to force himself into the inner office behind the door, but held his foot firmly in place against the door. A third person joined the others and informed plaintiff in a very loud manner no one would accept service and screamed at plaintiff to stop blocking their efforts to close the security door. Plaintiff continued his firm demand to see Gary A. Bemis or someone who could legally accept service for him and his company (plaintiff believed Gary A. Bemis owned it) and the third person's demands grew louder.

The process server, sensing complete lack of cooperation from the unknown persons behind the door, threw the court papers on the floor in between the door and the door jamb. Plaintiff indicated to the process server that throwing the papers on the floor didn't seem right. He leaned forward, his foot held firmly against the door, and picked up the court papers. As plaintiff began to straighten, court papers in hand and left foot firmly in place against the security door, an extremely loud and long scream

came from the unknown person or persons inside who seemed to be rushing from an

area  back behind the security door.  It was not apparent then, but became apparent

afterward  they were rushing toward the door to increase their velocity and force.

Within a split second the security door was slammed without warning with such

force from inside that it crashed into plaintiff's hip and left shoulder and head, throwing

him into the waiting room. (Plaintiff's left shoulder and neck had undergone surgical

operations in 2005 after plaintiff had been struck at sixty-five mph by an Escalade, the

same shoulder reinjured – along with Plaintiff's neck – in the assault and battery by

Defendants' employees, servants or associates.

Plaintiff immediately realized his shoulder and his neck had been injured by the

malicious weaponizing of the high security door and believed he received a concussion

as a result of same. Apparently realizing they or their employees had committed a

potentially fatal assault and battery on the Plaintiff, a person who gave his name as

Jonathan stepped into the waiting room as if to assess the level of damages and asked

for the court papers. He looked the Superior Court papers over and stated he was

accepting service for Gary A. Bemis and Accounts Management Services, Inc.

Plaintiff was confused to such a degree that he did not recall if he had in fact served

the court papers himself or if he had handed the process server the court papers to

properly complete service. The process server had driven his own car to 6101 Ball

Road and Plaintiff was relieved of any attempt to drive a vehicle. Plaintiff left with the

process server who, having witnessed the Defendant-initiated assault and battery on

Plaintiff, and realizing Plaintiff was in a state of shock and thereby unaware of the

severity of the attack, insisted on driving plaintiff directly to Saddleback Memorial

Hospital in Laguna Hills. Plaintiff accepted the offer, but stated he wanted to go to his home to lie down and try to clear what he felt were lumps in his head.

The process server dropped Plaintiff at his home where he tried to recuperate before his wife drove him to the Saddleback Memorial Hospital. X-Rays were taken of his left shoulder and his neck (both of which had been broken in the 2005 auto accident). Over several hours Doctors determined that plaintiff's left shoulder had been sprained. The titanium parts installed in his neck in 2005 appeared to be in place, but the examining physician determined Plaintiff's neck had been sprained. The Saddleback Memorial doctor discussed having an MRI, that one should be done at a later date.

Plaintiff notified Bemis and Account Management Services he had seen doctors at Saddleback Memorial Hospital in Laguna Hills and had X-Rays that indicated sprains of his neck and shoulder and he would file suit for damages after he went through the MRI exam.

(Note: Plaintiff returned to the hospital in early March to schedule the MRI. His headaches had increased as if he had lumps in his brain and the loss of feeling in his hands was severe: either massive nerve damage needs repair or the blood supply to his hands was frequently shutting off. Plaintiff was told the hospital was not seeing patients unless for virus symptoms and treatments as it was focused on an expected flood of virus-related patients and the MRI was not possible until a much later date.)

It transpired that the Nation had begun the shutdown process concerning the virus. The hospital was completely reconfigured to deal with the shutdown and the proposed MRI for the Plaintiff was no longer an option throughout the shutdown.

Plaintiff initiated this personal injury suit vs. Defendants Accounts Management Services, Inc. and Orchard LLC in March 2020, but the Superior Court was shut down, blocked by sheriff deputies at the entrance, and he was unable to enter to file it.

Plaintiff has suffered a permanent headache since the assault and battery on him which he describes as having lumps throughout his brain. Plaintiff's shoulder is constantly in pain beyond any negative ongoing affects from the 2005 episode and he is experiencing shooting pains from his left shoulder down his arm and into his left hand more frequently than his right arm and hand which also exhibits a deadness on a daily basis. The shooting pains are crossing laterally into his left chest and his heart. He has always been a healthy walker, but his walking has increasingly turned his military bearing into an unbalanced vertigious loss of control.

Plaintiff believes he has incurred major nerve damage to his neck and shoulder as a result of Defendants' actions on February 25, 2020 on their premises at 6101 Ball Road, unit 207, such that, when his arm is at rest, or his hands held in place for a short length of time as when lying on either side in bed or more especially when holding the steering wheel of a car, his hands grows numb to such an extent that he loses all feeling as if there is either no blood flowing into his hands or all the nerves in his hands have shut down. Once again he has to sleep only on his back with three raised pillows to keep either the blood or the nerves functioning in his hand to avoid feeling his hands and lower arm are dying to such an extent that he can't control or hold anything with his hand.

Whereas this physical-deterioration is increasing, plaintiff is under the belief that he has been permanently damaged in such manner that his life will never return to what he believes would be normal for him.

## V. **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**

(FEDERAL DEBT COLLECTIONS PRACTICES ACT)

(As against Defendants: Accounts Management Services, Inc.;

Orchard LLC; Gary A. Bemis; Farzad Massoudi; Asghar Mohammad)

Defendants in concert intentionally committed grievous acts of bodily harm with a complete disregard for Plaintiff's life in the act of preventing his legal challenge to their collection process whereby they filed judgment and renewed judgment without serving notice to Plaintiff while piling on massive interest charges.

### **SECOND CAUSE OF ACTION**

(VIOLATION OF DUE PROCESS RIGHT, AMENDMENTS V,

X1V, U.S. CONSTITUTION)

Defendants' employees, agents or servants violently struck Plaintiff with a heavy duty security door installed by Defendants in the office building at 6101 Ball Rd., Cypress, California to keep targeted persons from entering to dispute the legality of Defendants' claims, charges and procedures. Although one of Defendants' employees did open the security door and accept service, Plaintiff is of the belief that the employee opened the door to determine for himself any injuries Plaintiff suffered rather than just allow Plaintiff to complete his Due Process service of court papers related to Defendants and Plaintiff.

## THIRD CAUSE OF ACTION

(DIVERSITY OF CITIZENSHIP, ART. 111, Sect. 2, U.S. Const.)

Defendant Asghar Mohammad is the owner of the office building at 6101 Ball Rd. in Cypress, California in which Plaintiff was assaulted and battered with a specially-installed heavy duty security door by persons working on the premises inside that was weaponized by said persons as a weapon to drive Plaintiff out of the building. Asghar Mohammad is the owner of Orchard LLC which is listed as the partnership that he owns the building through. Asghar Mohammad is a citizen and resident of an unknown foreign country believed to be either Pakistan or India. Defendant Asghar Mohammad's Orchard LLC's partnership is registered at a vacant house at a residential address in Orange County at 2135 Timbergrove Rd., City of Orange. California 92867.

## VI. REQUEST FOR RELIEF

WHEREFORE, the Plaintiff prays for judgment as follows:

Compensatory damage award of five million USD ($5000000) and a punitive damage award based on the intentional assault and battery of Plaintiff with complete disregard of Plaintiff's life of ten million USD ($10000000).

## VII. DEMAND FOR JURY TRIAL

Plaintiff hereby requests a jury trial on all issues raised in this complaint.

Dated: _09/03/2020_

Sign: _Ross Massahan_

Print name: _ROSS MASSAHun_

# EXHIBIT B

# Declaration of Ross Massbaum

## DECLARATION OF PLAINTIFF ROSS MASSBAUM IN RE: MASSBAUM VS. ACCOUNTS MANAGEMENT SERVICES, INC.; ORCHARD, LLC; ASGHAR MOHAMMAD; FARZAD MASSOUDI; GARY A. BEMIS

In 2005, I was hit by an Escalade from behind and taken by ambulance to the local hospital in Laguna Hills. I underwent surgeries there for a damaged left shoulder and my neck. I had been an army paratrooper (27 jumps) and had both hip and neck problems severely exacerbated by the Escalade impact at 55-65 mph. I was for approximately a year in which I lost a contract with Harlequin Books to write movie scripts for twelve novels.

At a later date I met with Dr. Massoudi's collection agent Gary A. Bemis and paid $2500 toward the doctor's $9000 billing. I agreed to payments which I was financially unable to make. In 2019, I received a courtesy notice from the Orange County Clerk that a judgment that I was unaware of had been renewed. The judgment had grown to more than $14000 and I filed a lawsuit vs. the collection agency to clear the judgment or the interest. I was prepared to pay the balance, but I challenged the judgment and its renewal due to the fact I was never served either it or the renewal.

On February 25 2020 I traveled with a process server to the collection agency located at 6101 Ball Rd., Cypress, Ca. The process server drove his auto. He and I found the agency's office on the 2nd floor, entered with the Superior Court papers at hand, and approached a heavy-duty security door marked Employees Only. The process server knocked and a flurry of activity started wherein the door was partially opened, closed, opened again, with loud responses aimed at blocking any potential service of the Superior Court papers.

Clearly, no one in the collection agency would accept service. When the door was reopened partially once again, I placed my left foot against the bottom of the security door and insisted on the completion of the process server's mission. At a point, loud arguments continued from inside the security door, and the process server decided to toss the Court papers (Massbaum vs. Accounts Management Services, Inc. and Gary A. Bemis) onto the floor just inside the partially open security door and stated: "You've been served."

I had accompanied the process server to ascertain that a proper service of the Court papers would occur. I therefore, foot pressed against the bottom of the

1

security door, I instinctively bent forward, stated that it wasn't proper to drop anything on the floor, and gathered up the court papers. As I began to straighten, I heard what sounded like an extremely ninja-like scream that, as it turned out, was connected to a person or persons unknown rushing inside the security door to gather more than enough force to violently smash into the security door from inside.

I was struck by the door with such force that it drove my firmly-planted foot into the lobby while smashing my shoulder and head and knocking me into the lobby. Later I realized that I was suffering a concussion and had no idea what happened thereafter. I pieced it together and realized that a party from the collection agency stepped into the lobby to determine his view of my condition. I have no other recollection and I am unaware if the process server completed the service or if I had mistakenly given the court papers myself to that party.

I was brought directly to the hospital in Laguna Hills by the process server, but decided I should return to my home and try to clear what felt like lumps in my head. My wife drove me back to the hospital and I underwent emergency care including X-rays of my neck and shoulder, both of which were declared sprained by the doctor who treated me. The doctor insisted that I return within three days to have an MRI on the area of my head. My neck movement was so stiff I couldn't turn my head and that continues to this day.

My major concerns worsened on a daily basis when it became apparent to me that I should have the MRI as soon as possible. These concerns were and are that I have severe nerve damage such that both my arms and most particularly both my hands lose complete feeling on a daily/nightly basis. I was unable to schedule an MRI due to the hospital's March shutdown for all patients other than any who suffer from the virus at the heart of the ongoing pandemic.

The nerves on my left side experience shooting pains that appear to hit my heart while numbing my left hand as if I am carrying dead weights that were my hands. I am frequently petrified by the loss of normal feeling in both hands, making driving a danger unless I am only traveling a short distance. I am unable to lay on either side in bed because which side I lay on, the hand immediately freezes up and loses all feeling. I have to immediately stand and wait for as much as an hour to have feeling return so that I may lay down to sleep on my back.

I was in excellent shape in the recent years prior the attack by employees, agents or servants of the collection agency and the property owner, Orchard LLC. It was beyond violent: it was done with complete disregard for life and it is my hope that the injuries will not be responsible for an early death. The hospital assured me I will be able to return for an MRI within the next few weeks as of this date, September 1st, 2020.

ROSS MASSBAUM

DATED: 09/3/2020

See Attached Certificate

3

# JURAT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of ORANGE

Subscribed and sworn to (or affirmed) before me on this 3 day of SEPTEMBER,

20 20 by ROSS MASSBAUM,

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature                                    (Seal)

DEXTER SUN LYU
Notary Public - California
Orange County
Commission # 2288727
My Comm. Expires May 16, 2023

---

## OPTIONAL INFORMATION

## INSTRUCTIONS

DESCRIPTION OF THE ATTACHED DOCUMENT

PERSONALLY DRAFTED DECLARATION
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages 1 Document Date 09/03/2020

_____
Additional information

The wording of all Jurats completed in California after January 1, 2015 must be in the form as set forth within this Jurat. There are no exceptions. If a Jurat to be completed does not follow this form, the notary must correct the verbiage by using a jurat stamp containing the correct wording or attaching a separate jurat form such as this one with does contain the proper wording. In addition, the notary must require an oath or affirmation from the document signer regarding the truthfulness of the contents of the document. The document must be signed AFTER the oath or affirmation. If the document was previously signed, it must be re-signed in front of the notary public during the jurat process.

- State and county information must be the state and county where the document signer(s) personally appeared before the notary public.
- Date of notarization must be the date the signer(s) personally appeared which must also be the same date the jurat process is completed.
- Print the name(s) of the document signer(s) who personally appear at the time of notarization.
- Signature of the notary public must match the signature on file with the office of the county clerk.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different jurat form.
  - ❖ Additional information is not required but could help to ensure this jurat is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
- Securely attach this document to the signed document with a staple.

# EXHIBIT A

## SADDLEBACK HOSPITAL MEMORIAL CARE DATED 2/25/2020

# AFTER VISIT SUMMARY



## MemorialCare™

**Ross Massbaum** DoB: 7/23/1940

📅 2/25/2020  📍 Saddleback E.D. 949-452-3569

## Instructions

Follow all discharge instructions. Take all medications as prescribed if any. Return to the Emergency Department immediately if your condition worsens or new symptoms develop. Make sure to arrange for your follow-up appointment.

 **Read the attached information**
Shoulder Sprain (AfterCare(R) Instructions(ER/ED)) (English)

 **Follow up with Your doctor in 3 days (around 2/28/2020)**

## Today's Visit

You were seen by Khanh P Tran, MD

**Imaging Tests**
XR C-SPINE LIMITED
XR SHOULDER COMPLETE LEFT

Your primary care doctor of record is seen below. Please notify registration staff if this has changed.

No, Pcp, MD

**Medication Safety:**



**MemorialCare™**

**CONDITIONS OF ADMISSION**

☐ Long Beach Medical Center
☐ Miller Children's & Women's Hospital Long Beach
☐ Orange Coast Medical Center
☐ Saddleback Medical Center

1. **ARBITRATION:** I understand that any dispute arising out of my hospital or outpatient visit, hospital admission, or Conditions of Admission (COA) agreement will be determined exclusively by submission to arbitration as provided by California law (and as agreed below) on an individual-only basis and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings.

   I also understand that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration. Such arbitration shall be in accordance with California law including, but not limited to, the provisions of the medical injury compensation reform act. This arbitration agreement shall apply to any and all such disputes or claims arising out of medical or hospital care, treatment or services in connection with this hospitalization against hospital or its employees and any physician, surgeon, dentist, oral surgeon or podiatrist agreeing in writing to be bound by this provision, unless patient or undersigned initials below or unless rescinded by written notice within 30 days of signature.

   Demand for arbitration will be communicated in writing to all parties. Each party will select an arbitrator within 90 days of the written demand for arbitration and a third (neutral) arbitrator will be selected by the arbitrators appointed by the parties within 90 days thereafter. Either party shall have the absolute right to arbitrate separately the issues of liability and damages upon written request to the neutral arbitrator.

   An agreement to arbitrate shall not be a precondition to the furnishing of services under this COA.

   I have read and understand the Arbitration provision and agree / disagree (circle one) with its terms and conditions.    Initials: X _____

2. **CONSENT TO MEDICAL AND SURGICAL PROCEDURES:** I consent to the procedures which may be performed during this hospitalization or outpatient visit, which may include but are not limited to, laboratory, x-rays, mammography, medical or surgical services, telehealth services or anesthesia rendered under the general or special instructions of my physician, and screening tests required by law.

3. **HOSPITAL AND NURSING CARE:** I understand that I am under the care and supervision of my attending physician, and the hospital and its nursing staff carry out the instructions of such physician. I further understand that the hospital provides only general duty nursing care and care ordered by my physician(s), and that the hospital is not responsible for failure to provide a private duty nurse. I hereby release the hospital from any and all liability arising from the fact that the hospital does not provide this additional care.

4. **LEGAL RELATIONSHIP BETWEEN HOSPITAL AND PHYSICIAN:** I understand that (i) all physicians and surgeons furnishing services to me, including radiologists, pathologists, anesthesiologists, neonatologists, intensive care specialists, emergency department physicians, and other hospital-based physicians, are independent contractors and are **not** employees or agents of the hospital, and accordingly that (ii) fees for physician services are billed separately and independently of hospital charges, which means I will receive more than one bill for services.

   I have read and understand the Legal Relationship Between Hospital and Physician provision and agree to its terms and conditions. Initials: X _____

5. **PERSONAL PROPERTY AND VALUABLES:** I have been encouraged to leave my personal valuables at home. I understand that the hospital is not responsible for my personal property, valuables or belongings and I assume the risk of loss of, or damage to, my personal property, valuables or belongings not placed in the hospital's safe. I understand the potential liability for loss of any of my personal property, valuables or belongings placed in the hospital's safe for safekeeping may be limited by statute to a maximum of five hundred dollars ($500.00).

   I have read and understand the Personal Property and Valuables provision and agree to its terms and conditions.    Initials: X _____

A copy of this document is to be delivered to the patient and any other person who signs this document.



3016855

1004909 (10/30/18) 3016855

6. **CONSENT TO PHOTOGRAPH:** I consent to be photographed or videotaped while receiving treatment for purposes of my diagnosis, treatment, or the hospital's operations, including peer review and education or training programs. I understand that photography for other purposes (e.g. marketing or public relations) requires separate consent.

7. **PARTICIPATION IN MEDICAL EDUCATION AND CLINICAL TRAINING PROGRAM:** I understand that this hospital participates in teaching programs and that, unless I notify the hospital to the contrary in writing, I consent to receive treatment from residents, fellows, or students, all of whom are under appropriate supervision as required by their medical education and clinical training programs.

8. **PARTICIPATION IN HEALTH INFORMATION EXCHANGE (HIE):** I understand that this hospital may participate in a local, regional or national Health Information Exchange (HIE) including, but not limited to, the National Health Information Network (NHIN). This hospital's participation in a HIE is intended to facilitate access to and retrieval of clinical data as part of the hospital's ongoing effort to provide safer and more timely, efficient, effective, and patient-centered care. HIE may also be useful to public health authorities to assist in analyses of the health of the population. Personal health information that currently by law requires an additional signed authorization for release WILL NOT be transmitted to a HIE without my consent, or as otherwise mandated by law or regulatory requirement. For more detailed information regarding HIE, please refer to our Joint Notice of Privacy Practice or the MemorialCare Chief Compliance/Privacy Officer at (714) 377-3218.

9. **PATIENT RIGHTS AND RESPONSIBILITIES:** I understand that I have rights and responsibilities under state and federal law and that the hospital will provide assistance, including an interpreter, if I need help in order to understand these rights and responsibilities.

10. **IRREVOCABLE ASSIGNMENT OF ALL RIGHTS AND BENEFITS:** In exchange for, and in connection with, any and all of the services provided to me ("Services") by the hospital, whether I sign as patient or agent, I irrevocably assign to the hospital all of my rights, benefits, privileges, protections, claims and any other interests of any kind whatsoever, without limitation, including direct payment to the hospital for the Services, appeal rights, rights to fiduciary duties, rights to sue, rights to payment and rights to penalties or interest (collectively "Rights") that I had, have or may have in the future pursuant to, or in connection with, any insurance plan, health benefit plan, trust fund or any other source of payment, insurance, indemnity or health or medical coverage of any kind (collectively "Health Coverage"), such that I am hereby transferring all and retaining none of these Rights under any Health Coverage to which I am now, previously or may be entitled to in the future. To the same extent as authorized under this irrevocable assignment of Rights, I also authorize assignment of payment to physician(s) for medical treatment and services rendered during my hospitalization or outpatient care.

I hereby agree to personally cooperate with, and take all steps necessary, required or reasonably requested by any Health Coverage, to effectuate, perfect, confirm or validate my assignment and/or my authorization of the hospital as my authorized representative.

I understand that I am financially responsible for charges not covered by this assignment or for charges which have not been paid by the insurance company within forty-five (45) days after the billing date.

11. **FINANCIAL AGREEMENT:** I agree to promptly pay all hospital bills in accordance with the rates listed in the hospital's current charge description master, and with the regular terms and standards of the hospital, including its charity care and discount payment policies. I understand that a balance unpaid more than thirty (30) days after presentation of the discharge bill or as mutually agreed by third party contract shall be considered delinquent. If my account is referred to an attorney for collection, I shall pay reasonable attorney's fees and collection expenses. I acknowledge that all delinquent accounts shall bear interest at the legal rate, unless prohibited by law.

12. **HEALTH PLAN OBLIGATION:** I have been informed that the hospital maintains a list of health plans with which it contracts, that the list of such plans is available upon request from the Financial Office, and that the hospital has no contract, expressed or implied, with any plan that does not appear on the list. It is my responsibility to determine if physicians providing services to me contract with my health plan, if any. I agree to pay the full charges of all Services rendered to me by the hospital if I belong to a plan that does not appear on the above mentioned list, or if the Services provided are not covered by my plan. All physicians and surgeons, including the radiologist, pathologist, emergency physician, anesthesiologist, and others, will bill separately for their services.

13. **MATERNITY PATIENTS:** If I deliver an infant(s) while a patient of this hospital, I agree that this COA applies to the infant(s).

A copy of this document is to be delivered to the patient and any other person who signs this document.



3016855

14. **COMMUNICATIONS:** I authorize the hospital, its agents, and independent contractors affiliated with the hospital's medical staff to use any United Stated Postal Service mailing address, use any e-mail address, contact me by telephone via either landline and/or wireless line (by live agent or prerecorded predictive auto-dialer) and wireless free-to-end user text messaging for the purpose of sending me discharge instructions and billing updates/notices/bad debt collection information.

15. **ENFORCEABILITY:** If any provision of this COA is finally determined by a court to be unenforceable, the remainder of this COA shall remain in full force and effect. This hospital COA shall bind the parties hereto, including newborns, and the heirs, representatives, executors, administrators, successors, and assigns of such parties and newborns.

I certify that I have read and understand the foregoing and received a copy thereof. I am the patient, the patient's legal representative, or am otherwise authorized by the patient to sign the above, and I accept its terms and conditions.

BY YOUR SIGNING THIS COA YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL UNLESS YOU HAVE DECLINED IN ARTICLE 1 OF THIS CONTRACT.

x _____     2/25/20          7:52
Patient / Parent / Guardian / Conservator        Date                Time


(Relationship if Signed by other than Patient)


Name of Hospital's Duly Authorized Representative (Please Print)

_____     2/25/20          7:53
Representative Signature                 Date                Time

---

Interpreter's Verification: I declare that I have read to the patient, and/or if appropriate his/her representative, the entire contents of this document in the _____ language, which the patient had requested to be used.


Name of Interpreter (Please Print)


Interpreter Signature                    Date                Time

---

## ACKNOWLEDGEMENT OF RECEIPT

| | | | |
|---|---|---|---|
| **Patient Rights** | ☑ Copy Provided | ☐ Copy Declined | | Initial Here: X ___ |
| **Mammography Information** | ☐ Copy Provided | ☐ Copy Declined | ☑ N/A | Initial Here: X ___ |
| **Car Seat Information** | ☐ Copy Provided | ☐ Copy Declined | ☑ N/A | Initial Here: X ___ |

*"Internal Use Only"*
☐ Series Account    Expiration/End Date: _____

---

A copy of this document is to be delivered to the patient and any other person who signs this document.


3016855

1004909  (10/30/18) 3016855                                    Page 3 of 3

1  Ross Mussbaum _(Full Name) quail creek rd. 195

2  19528701 quail 725 (Address Line 1)

3  Laguna Hills CA. 92656 (Address Line 2)

4  _____ (Phone Number)

5  Plaintiff __ in Pro Per

6  (indicate Plaintiff or Defendant)

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11  Ross Mass Baum

12  _____ ,    Case No.: _____

13          Plaintiff,

14  vs.                              **PROOF OF SERVICE BY MAIL**

15  Account Servuces

16  Management Etal

17  _____

18  _____

19  _____ ,

20          Defendant(s).

21  _____

22

23  I, Audrey Morton _____, declare as follows:

            (name of person serving documents)

24  My address is 23986 Aliso Creek RD 518

25  Laguna Niguel CA. 92677 ____, which is located in the

26  county where the mailing described below took place.

27

28

Pro Se Clinic Form                    1
                              Proof of Service

On _9-02-2020_, I served the document(s) described as:

(date of mailing)

COMPLAIN TFOR: Federal Debt Collection Practices Act, 15 U.S.C., Sect. 1692-1692 P: Diversity of Citizenship; et al.

(list the names of the documents you are mailing)

_____

_____

_____

_____

_____

_____

on all interested parties in this action by placing a true and correct copy thereof in a sealed envelope, with first-class postage prepaid thereon, and deposited said envelope in the United States mail at or in ____Laguna Niguel Ca____,

(city and state of mailing)

addressed to:

____see attached list____ (name)          _____ (name)

_____ (address)          _____ (address)

_____ (address)          _____ (address)

_____ (address)          _____ (address)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _9-02-2020_ at _Laguna Niguel CA. 92671_

(date)                              (city and state of signing)

_____ (sign)

_Audrey Morton_
(print name)

2
Proof of Service

Pro Se Clinic Form

(Attached list of Defendants)

1. Accounts Management Services, Inc 6101 Ball Rd., Cypress
   Ca 90630

2. Gary A. Bemis 61010 Ball Rd., Cypress Ca 90630

   Orchard LLC, 2135 Timbergrove Rd., Orange, Ca92867

   Farzad Massoudi, 23961 Calle De La Magdalena, Suite 405
   laguna hills Ca 92653

   Asghar Mohammad c/o OrchardLLC, 2135 Timbergrove Rd.,
   Orange Ca 92867

# PRIORITY
## ★ MAIL
## EXPRESS



U.S. POSTAGE
$26.35
EXFL        0007
Orig: 92677
09/03/20
2000052514

CPU

**FLAT RATE ENVELOPE**
ONE RATE ★ ANY WEIGHT™

Del
9/4

*urgent!*



UNITED STATES
POSTAL SERVICE®

**PRIORITY
MAIL
EXPRESS™**

EE 140069049 US

CUSTOMER USE ONLY

FROM: (PLEASE PRINT)        PHONE ( )

ROSS MASSEBERG
26201 Quail Creek 195
Laguna Hills, CA 92656

PAYMENT BY ACCOUNT (if applicable)
USPS® Corporate Acct. No.        Federal Agency Acct. No. or Postal Service™ Acct. No.

DELIVERY OPTIONS (Customer Use Only)
☐ SIGNATURE REQUIRED

ORIGIN (POSTAL SERVICE USE ONLY)
PO ZIP Code: 92677
Scheduled Delivery Date (MM/DD/YY): 9-4-20
Postage: $26.35

Date Accepted (MM/DD/YY): 9-3-20
Scheduled Delivery Time: ☐ 10:30 AM ☐ 3:00 PM ☐ NOON
Insurance Fee: $0    COD Fee: $0

Time Accepted: 11:55 ☐ AM ☐ PM
10:30 AM Delivery Fee: $

Return Receipt Fee: $0    Live Animal Transportation Fee: $0

Special Handling/Fragile: $

Sunday/Holiday Premium Fee: $

Total Postage & Fees: $26.35

Weight: ☐ Flat Rate    Acceptance Employee Initials: EM

TO: (PLEASE PRINT)        PHONE ( )

CLERK'S OFFICE
US DISTRICT COURT
411 W. 4TH ST.
SANTA ANA, CA 92701

ZIP + 4® (U.S. ADDRESSES ONLY)

■ For pickup or USPS Tracking™, visit USPS.com or call 800-222-1811.
■ $100.00 Insurance included.

DELIVERY (POSTAL SERVICE USE ONLY)
Delivery Attempt (MM/DD/YY): Time: ☐ AM ☐ PM    Employee Signature

Delivery Attempt (MM/DD/YY): Time: ☐ AM ☐ PM    Employee Signature

LABEL 11-B, OCTOBER 2019    PSN 7690-02-000-9996    1-ORIGIN POST OFFICE COPY



RECEIVED
CLERK, U.S. DISTRICT COURT

SEP 8 2020

CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION    BY DEPUTY

*URGENT!*

EP13F July 2013
OD: 12.5 x 9.5

P 10001000006



UNITED STATES
POSTAL SERVICE®

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select international destinations. See DMM and IMM at pe.usps.com for complete details.
* For international shipments, the maximum weight is 4 lbs.

  

★ **MAIL** ★
# EXPRESS™

OUR FASTEST SERVICE IN THE U.S.

## FOR DOMESTIC AND INTERNATIONAL USE
### PLACE MAILING LABEL HERE

GUARANTEED DELIVERY DATE *

GUARANTEED DELIVERY TIME ‡

USPS TRACKING™ INCLUDED

INSURANCE INCLUDED

PICKUP AVAILABLE

SIGNATURE INCLUDED UPON REQUEST

WHEN USED INTERNATIONALLY,
A CUSTOMS DECLARATION
LABEL MAY BE REQUIRED.



EP13F July 2013   OD: 12.5 x 9.5



P S 10001000006

* Money Back Guarantee to U.S., select APO/FPO/DPO, and select International
destinations. See DMM and IMM at pe.usps.com for complete details.

‡ Money Back Guarantee for U.S. destinations only.

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

  

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express™ shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; July 2013; All rights reserved.